IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID ROTH and : | |
| BETSY ROTH, his wife, : | Civil Action No. 1:06-CV-1452 |
|     Plaintiffs : | |
| : | (Chief Judge Kane) |
| v. : | |
| : | |
| NORFALCO, : | |
|     Defendant : | |

## MEMORANDUM

Before the Court is Defendant's motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The parties have briefed the motion, and it is ripe for disposition. For the reasons that follow, the motion will be denied.

**I.    BACKGROUND**

Plaintiff David Roth[1] brings this action for injuries sustained when he unloaded a shipment of sulfuric acid sold by Defendant NorFalco and large amounts of acid sprayed onto his face, causing severe burns. (Am. Compl. ¶¶ 11, 13, 14.) The acid sold by NorFalco was delivered to Roth's employer via a railroad tank car. Roth alleges that the car contained various components that NorFalco allegedly designed, manufactured, and/or assembled for use in unloading the acid. (Am. Compl. ¶ 18.) The railroad tank car did not, however, have certain pressure gauges or valves, which the Plaintiffs claim would have prevented Roth's injuries. (Am. Compl. ¶ 19.)

The Roths filed this action on July 25, 2006, alleging tort and breach-of-warranty claims, and seeking recovery for loss of consortium. (Doc. No. 1.) NorFalco moved to dismiss several of the Roths' claims. (Doc. No. 7.) The Roths thereafter filed an amended complaint (Doc. No.

---

[1] Plaintiffs in this action are David and his wife, Betsy.

12), rendering NorFalco's motion to dismiss moot (Doc. No. 21). NorFalco filed the instant motion to dismiss (Doc. No. 13) seeking to dismiss the Roths' strict liability and breach of warranty claims, along with a supporting brief (Doc. No. 15). The Roths filed a brief in opposition (Doc. No. 17), to which NorFalco replied (Doc. No. 20).

## II.   STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when, accepting all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the complaint must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). Moreover, in order to satisfy federal pleading requirements, a plaintiff's complaint must "provide the grounds of his entitlement to relief [beyond] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (internal brackets and quotation marks omitted) (quoting Twombly, 127 S. Ct. at 1964-65).

## III.   DISCUSSION

In their amended complaint, the Roths bring five counts: a products-liability claim (Count I); a strict-liability claim (Count II); a negligence claim (Count III); a breach-of-warranty claim (Count IV); and a loss-of-consortium claim (Count V). In the instant motion to dismiss, NorFalco seeks the dismissal of the Roths' strict-liability claims (Counts I and II) and breach-of-

warranty claim (Count IV). NorFalco contends that the strict-liability claims must fail because NorFalco did not manufacture, sell, or distribute a defective product, and because distribution of sulfuric acid is not an "abnormally dangerous activity." NorFalco further contends that the breach-of-warranty claim must fail because no sale occurred and because no product was warranted. The Court will address each argument in turn.

### A.     Strict liability because of a defective condition

Pennsylvania follows the products-liability rule set forth in § 402A of the Restatement (Second) of Torts. Webb v. Zern, 220 A.2d 853 (1966); see Moyer v. United Dominion Indus., 473 F.3d 532, 538-41 (3d Cir. 2007).[2] Section 402A provides that "[o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement (Second) of Torts § 402A.

NorFalco contends that because it "was not a manufacturer or seller" of railroad tank cars—it only used them to ship sulfuric acid—it cannot be held liable for any defects in the railroad tank car. In other words, NorFalco argues that it cannot be held liable under § 402A because it did not sell a defective *product*. Although NorFalco did not manufacture or sell the railroad tank car, for the purposes of strict liability under § 402A, the railroad tank car and the sulfuric acid contained within it are a single product. As the comments to the Restatement

---

[2] The parties agree that Pennsylvania law governs this action.

(Second) of Torts § 402A explains:

> [A] defective condition may arise not only from harmful ingredients, not characteristic of the product itself either as to presence or quantity, but also from foreign objects contained in the product, from decay or deterioration before sale, or from the way in which the product is prepared or packed. *No reason is apparent for distinguishing between the product itself and the container in which it is supplied; and the two are purchased by the user or consumer as an integrated whole.* Where the container is itself dangerous, the product is sold in a defective condition. Thus a carbonated beverage in a bottle which is so weak, or cracked, or jagged at the edges, or bottled under such excessive pressure that it may explode or otherwise cause harm to the person who handles it, is in a defective and dangerous condition. The container cannot logically be separated from the contents when the two are sold as a unit, and the liability stated in this Section arises not only when the consumer drinks the beverage and is poisoned by it, but also when he is injured by the bottle while he is handling it preparatory to consumption.

Restatement (Second) of Torts § 402A cmt. h (emphasis added). In other words, a product for the purposes of liability under § 402A may include the container in which the goods were sold.

An illustration of this principle is found in Ebenhoech v. Koppers Industries, Inc., 239 F. Supp. 2d 455 (D.N.J. 2002). In Ebenhoech, a worker slipped and fell off of a tank car, while trying to clean a chemical spill off of the car. Id. at 460. Before trial, the defendant moved to strike the plaintiff's manufacturing-defect claim on the grounds that the defendant manufactured the chemical, but did not manufacture the tank car. Id. at 472. The Court, applying New Jersey law, denied the defendant's motion, noting that a "defect in the product can be a defect in its packaging," id. at 473, and holding that the tank car was an "integral part of the product" because the chemical "cannot be sold and distributed to users without it," id. at 475.

Here, NorFalco can be held strictly liable for the container (the railroad tank car) in which it supplied the contents (acid) to Roth's employer, regardless of whether it manufactured the

container because Roth alleges that the product sold by NorFalco encompasses both the product and its packaging. Accord Weyerhaeuser Co. v. Thermogas Co., 620 N.W.2d 819, 825-26 (Iowa 2000) (holding that seller of liquid propane is strictly liable for defects in the tank containing the liquid propane). As such, the Court finds that, based upon the allegations within the complaint, NorFalco is a seller engaged in the business of selling sulfuric acid and the packaging in which it arrives, that is, the railroad tank car containing the acid.

The cases cited by NorFalco in support of its motion to dismiss—Thomas v. ABX Air, Inc., 290 F. Supp. 2d 532 (E.D. Pa. 2003) and Voelker v. United Airlines, Inc., No. 93-1653, 1993 U.S. Dist. LEXIS 13130 (E.D. Pa. July 6, 1993)—are not to the contrary. In Thomas, an employee sued his employer when the employee was injured while unloading a freight truck container with an allegedly defective plywood door. 290 F. Supp. 2d at 534. On summary judgment, the court found that although the employer manufactured the type of door that injured the employee, the employer was not a "seller" of the door because it "never sold the plywood doors which it manufactures to any other individuals or business entities, nor has it re-sold or leased any of the doors which it purchased from [a third party] nor is it in the business of manufacturing and selling plywood doors." Id. at 537. Thus, the court concluded that § 402A did not apply because the employer was not a seller. In Voelker, an airline passenger sued the airline after the passenger's eardrum ruptured during flight, apparently on the theory that the plane was defective. 1993 U.S. Dist. LEXIS 13130, at *2. On a motion to dismiss, the court found that airline was not a "seller" of the plane in question, because the airline was "simply not in the business of transferring the possession of aircraft in any way. Rather, [the airline's] business [was] the use of the aircraft to provide air travel." Id. at *6.

Thomas and Voelker, therefore, both pertain to the question of whether the defendants were sellers. That inquiry is important in cases where no formal sale has occurred, but the relationship between a supplier of a product and the consumer of the product may be sufficiently involved to warrant strict liability. E.g., Kalumetals, Inc. v. Hitachi Magnetics Corp., 21 F. Supp. 2d 510, 515-16 (W.D. Pa. 1998) (bailor is a seller within the meaning of § 402A); Musser v. Vilsmeier Auction Co., 562 A.2d 279, 283 (Pa. 1989) (auctioneer is not a seller within the meaning of § 402A); Francioni v. Gibsonia Truck Corp., 372 A.2d 736 (Pa. 1977) (commercial lessor is a seller within the meaning of § 402A).

In the case at bar, the amended complaint leaves no doubt that NorFalco is a seller, at least in relation to the sulfuric acid sold to Roth's employer. The disagreement is whether NorFalco sold the railroad tank car *as part* of its product. Because that question has been answered in the affirmative, NorFalco's motion to dismiss will be denied as to Count I.

**B.     Strict liability because of an abnormally dangerous activity**

In Count II of the amended complaint, the Roths allege that NorFalco should be held strictly liable for Roth's injuries because the distribution of sulfuric acid is an "abnormally dangerous activity." Under the general approach embodied in § 519 of the Restatement (Second) of Torts, a person who "carries on an abnormally dangerous activity" is strictly liable for injuries sustained by another even if the person "exercised the utmost care to prevent the harm." Restatement (Second) of Torts § 519. In defining what constitutes an abnormally dangerous activity, section 520 of the Restatement (Second) of Torts provides six factors that courts should consider in determining whether an activity is "abnormally dangerous":

> (a) existence of a high degree of risk of some harm to the person, land

>    or chattels of others;
>
>    (b) likelihood that the harm that results from it will be great;
>
>    (c) inability to eliminate the risk by the exercise of reasonable care;
>
>    (d) extent to which the activity is not a matter of common usage;
>
>    (e) inappropriateness of the activity to the place where it is carried on; and
>
>    (f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520. Although the Supreme Court of Pennsylvania has not formally adopted the Second Restatement approach to abnormally dangerous activities, see Diffenderfer v. Staner, 722 A.2d 1103, 1107 (Pa. Super. Ct. 1998),[3] sections 519 and 520 have been approved and routinely applied by Pennsylvania's lower appellate courts. See Romeo v. Pittsburgh Assocs., 787 A.2d 1027 (Pa. Super. Ct. 2001); Smith v. Weaver, 665 A.2d 1215 (Pa. Super. Ct. 1995); Melso v. Sun Pipe Line Co., 576 A.2d 999 (Pa. Super. Ct. 1990); Albig v. Mun. Auth. of Westmoreland County, 502 A.2d 658 (Pa. Super. Ct. 1985). This Court and other federal courts within Pennsylvania have also applied §§ 519 and 520. Lutz v. Chromatex, Inc., 718 F. Supp. 413 (M.D. Pa. 1989); United States v. Union Corp., 277 F. Supp. 2d 478 (E.D. Pa. 2003).

Whether an activity is abnormally dangerous is a question of law, to be determined by the Court. Melso, 576 A.2d at 586. NorFalco argues that the Roths' amended complaint fails to

---

[3] In Haddon v. Lotito, 161 A.2d 160 (Pa. 1960) and Federoff v. Harrison Construction Co., 66 A.2d 817 (Pa. 1949), the Supreme Court of Pennsylvania adopted the First Restatement approach, which spoke to "ultrahazardous" activities. Diffenderfer, 722 A.2d at 1107 n.3. To date, the Supreme Court has not formally adopted the Second Restatement approach.

state a claim under § 519, because they have not alleged sufficient facts to support the conclusion that the delivery of sulfuric acid was abnormally dangerous based upon the § 520 factors. This inquiry is premature, however. As the Second Restatement counsels, the question of whether an activity is abnormally dangerous "is to be determined by the court, upon consideration of all the factors listed in this Section, and the weight given to each that it merits *upon the facts in evidence*." Restatement (Second) of Torts § 520 cmt. l (emphasis added).

Here, there are no facts in evidence. Instead, the Court must accept the facts that are pleaded: that "sulfuric acid could spray . . . in tremendous amounts and force that could cause severe burning to persons unloading [the acid] even through the exercise of the utmost care" (Am. Compl. ¶ 29); that "[t]he likelihood of harm is great because of the amount, force and nature of sulfuric acid" (Am. Comp. ¶ 30); that "NorFalco has been unable to eliminate the risk of injury" (Am. Compl. ¶ 31); that "[t]he unloading of sulfuric acid through railroad tank cars is not a matter of common usage" (Am. Compl. ¶ 32); and that "[i]t is inappropriate to require [Roth] and others to [unload sulfuric acid] at their places of employment" (Am. Comp. ¶ 33). Despite NorFalco's arguments that the Roths' allegations fall short of stating a claim and that some of the Roths' allegations are inconsistent with other allegations,[4] the Court finds that the Roths have alleged sufficient facts to raise a colorable § 519 action and that the Court "lacks a sufficiently developed record to evaluate whether the [§] 520 factors warrant a finding that [NorFalco] was engaged in an abnormally dangerous activity." Banks v. Ashland Oil Co., 127 F.

---

[4] For example, NorFalco makes much of the fact that the Roths "ignore their own allegations that components or valves would have prevented the acid from spraying, and therefore the risk of harm could have been eliminated." (Def's Br. in Supp. 14.) That the Roths' allegations are inconsistent is of no moment, however, because Federal Rule of Civil Procedure 8 explicitly permits pleading in the alternative. Fed. R. Civ. P. 8(d).

Supp. 2d 679, 681 (E.D. Pa. 2001); see also Piccolini v. Simon's Wrecking, 686 F. Supp. 1063, 1069-70 (M.D. Pa. 1988) ("[T]here are many factors that come into the equation when attempting to determine whether an activity is abnormally dangerous, and to properly analyze the question and issues involved the Court will require a more complete record."); Graham Oil Co. v. BP Oil Co., 885 F. Supp. 716, 722 (W.D. Pa. 1994).  Accordingly, NorFalco's motion to dismiss Count II of the amended complaint will be denied without any prejudice to NorFalco's ability to "reassert this defense after discovery is closed by way of a motion for summary judgment." Banks, 127 F. Supp. 2d at 681.

      C.     **Breach of warranty**

In Count IV of the amended complaint, the Roths allege that NorFalco breached implied and express warranties that "its product could be removed and distributed in a safe and prudent manner." (Am. Compl. ¶ 43.)  NorFalco lodges two primary objections to the Roths' claim. First, NorFalco argues that the Roths cannot show that a "sale" occurred.  Second, NorFalco argues that the Roths "fail to identify any tangible products or goods subject to any warranty." (Def's Br. in Supp. 17.)

Concerning NorFalco's first argument—that no sale occurred—the Court finds that the amended complaint plainly indicates that NorFalco "sold, supplied and distributed acids including sulfuric acid" to the Roths' employer. (Am. Compl. ¶ 5.)  In addition, the Roths allege that NorFalco "specifically warranted that the components designed, specified, produced and/or manufactured [by NorFalco] improved safety in unloading sulfuric acid from the railroad tank cars." (Am. Compl. ¶¶ 7-8.)  Thus, from the face of the complaint, it is clear that NorFalco engaged in the sale of a product, a product that the Roths allege was defective.

As to NorFalco's second argument—that no products were subject to a warranty—the Court again disagrees. The Roths allege that NorFalco made warranties, expressly and impliedly, concerning the quality and safety of their product. (Am. Compl. ¶¶ 8, 9, 43, 44.) For substantially the reasons set forth above, the Court finds that the amended complaint describes the product in question as the sulfuric acid and the railroad tank cars in which the acid was shipped. As such, NorFalco's arguments fail and the motion to dismiss Count IV will be denied.

## IV.   CONCLUSION

For the foregoing reasons, NorFalco's motion to dismiss shall be denied. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAVID ROTH and** :  | |
| **BETSY ROTH, his wife,** : | Civil Action No. 1:06-CV-1452 |
|    **Plaintiffs** : | |
| : | **(Chief Judge Kane)** |
| **v.** : | |
| : | |
| **NORFALCO,** : | |
|    **Defendant** : | |

## ORDER

**AND NOW**, on this 28th day of March, 2008, for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED THAT** Defendant's motion to dismiss (Doc. No. 13) is **DENIED**.

                                              s/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania